HERNÁNDEZ ET AL. *v.* COSTA.

APPEAL from the District Court of Ponce.

No. 369.—Decided June 6, 1910.

REDEMPTION BY A JOINT OWNER—AN ESTATE SOLD AT AUCTION IN PAYMENT OF TAXES.—When a joint owner redeems an estate that has been sold at auction in payment of taxes, he does it for the benefit of all the joint owners.

INTERLOCUTORY ORDERS—APPEAL FROM THE JUDGMENT.—According to section 213 of the Code of Civil Procedure, in an appeal from a final judgment any interlocutory order may be reviewed.

ESTOPPEL—OFFER TO COMPLY IN PART WITH AN ORDER—WAIVER OF RIGHTS.—Where a court erroneously orders several joint owners to reimburse a certain sum to the person acquiring an estate by purchase from the joint owner who had redeemed it, and they offer to comply in part with said order, their offer, if rejected by the court, does not constitute a waiver of rights nor an estoppel preventing them from opposing such order.

COMPLIANCE WITH A JUDICIAL ORDER—OFFER OF ONE OF THE PARTIES TO COMPLY IN PART.—According to the foregoing paragraph, the offer of one of the parties to partially comply with the order, if not accepted by the court, is as if it had never been made.

CONSENT TO JUDICIAL ORDERS.—When a court rejects the offer of one of the parties to partially comply with a judicial order, the maxim of *consensus tollit errorem* cannot be invoked against the party.

ESTOPPEL—STEPS TAKEN BY ADVERSE PARTY.—If, when the offer to comply in part with a judicial order is made, the adverse party, taking advantage of such offer, should immediately take steps with reference to said judicial order, then the estoppel might be invoked against the party making the offer.

Id.—Order Made at the Request of one of the Parties.—When a court makes an order at the instance of one of the parties, it is questionable whether such party has a right to raise the question of estoppel, waiver or renunciation.

Effect of Redemption—Retroaction of Title.—The redemption by a joint owner of an estate sold in payment of taxes has the effect of restoring the *status quo* existing before the sale, with the right of the redemptioner to demand from the other joint owners their respective shares in the redemption expenses.

Redemption by a Joint Owner—Nature of the Redemptioner's Title.—A joint owner who redeems an estate sold for taxes, by paying to the purchaser thereof the sum to which he is entitled, does not acquire by such purchase any new title to the land.

Id.—Title of the Redeeming Joint Owner.—As the law contains no provision creating a new title in favor of the redemptioner, the joint owner who acquires an estate sold for taxes, by redeeming it from the purchaser, does not thereby acquire any new title to the property.

Id.—Action Against the Other Joint Owners.—Under the law in force in Porto Rico, the joint owner redeeming an estate sold at auction for taxes has a right of action against the other joint owners for their proportionate share of the expenses of redemption.

The Person Acquiring from the Redemptioner—His Responsibility.—Redemption does not, by operation of the law, produce a new title in favor of the purchaser of an estate from a joint owner who redeemed it, especially when such purchaser had actual knowledge of the existence of other joint owners.

Prescription.—Joint owners prosecuting an action against the person who purchased the estate from the redeeming joint owner, for the purpose of compelling such purchaser to acknowledge their rights to said property, cannot be charged with laches, aside from the consideration that the period of prescription had not run.

Redemption by a Joint Owner—Sale of the Redeemed Estate.—The third party who buys from the redeeming joint owner the whole of an estate sold in payment of taxes acquires from the vendor only a participation equal to the joint ownership which said vendor had in the estate, and the other joint owners have a right of action against such third party for the purpose of establishing their right of ownership in the property.

Id.—Right of the Vendee to Demand from each of the Other Joint Owners His Proportionate Share of Redemption Expenses.—Unless the joint owner who redeems an estate and sells it to a third party expressly relinquishes his right to demand from the other joint owners their proportionate share of the expenses of redemption, such third party has no cause of action, as vendee, against said joint owners.

Improvements on the Estate—Rights of the Vendee.—When a person who in good faith acquires an estate from a joint owner who redeemed it, believing that he had acquired the whole thereof, he is entitled to compensation for the improvements and expenses made by him for the benefit of the property.

Id.—Useful Improvements.—Before the vendee can demand to be reimbursed the cost of improvements made on the property, it must be determined whether such improvements were for the benefit of the land.

JUDICIAL DEPOSIT.—A judicial deposit erroneously demanded by a court may be withdrawn at the request of the party concerned.

The facts are stated in the opinion.

*Mr. José Tous Soto* for appellants.

*Messrs, Tord, Toro and Canals* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

For a default in the payment of taxes the farm "Rita," in the ward of "Cerrillos" of the district of Ponce, was sold at public auction to José Liborio Hernández for the sum of $200. Domingo Felici, one of several coowners, paid into the registry of property the money necessary to redeem the same, and a certificate of redemption was issued in his favor by the registrar of property on March 8, 1905. Liborio Hernández brought a suit against both Felici and the registrar of property to the exclusion of his coowners, but this court refused against Felici in the lower court. The question was raised in that suit that Felici did not have the right to redeem the property to the exclusion of his coowners, but this court refused to discuss that question as the other heirs had not intervened, and limited its opinion to deciding that one coowner had a right to redeem the whole property in question. On March 13, 1907, Felici made a deed of said property to Carlos Costa for the sum of $900. The other coowner did not join in the deed.

On April 10, 1908, some of the original coowners of the property in question, who are appellants here, began a suit against Carlos Costa to have him acknowledge their interests and rights in the property, for damages and accounting, for some of them to be put in possession of the property for the administration of the same, and that the property be divided or sold at public auction. After some preliminary proceedings the court found that the complainants had been owners of 41.828 per cent of the whole property; that Costa had expended $2,040 in improvements, and adding to this his original outlay of $900, the total sum expended

by him amounted to $2,940; that before proceedings to obtain a division could be had, the plaintiff should first deposit in court, in payment of their aliquot interests in said property, the sum of $1,229.74, to reimburse the said Carlos Costa. This order was made on October 31, 1908, and slightly amended on November 13, 1908, the plaintiffs being given until November 27, 1908, to comply with the same.

On the latter date the complainants came into court and expressed that they were unable to comply with the order of court; that all they could raise was the sum of $400, which was more than sufficient to satisfy their proportionate share in the amount that Carlos Costa had paid for the property, and that the complainants were willing to renounce any share in the produce of the farm resulting from the expenses and outlay made thereon by Carlos Costa, and they deposited the $400 in court. The complainants also asked that, in case their request could not be granted, the time for making the deposit of $1,229.74 be extended.

The defendant then came into court and moved that, as the complainants had not complied with the order of November 13, they were in default, and that judgment should be rendered in his favor. The court, on December 9, 1908, rendered judgment in favor of the defendant without prejudice to the rights of the complainants.

Both sides appealed from the judgment of December 9, 1908, and in their notices of appeal both sides expressed their dissent from the order of October 31, 1908. In an appeal from a final judgment any interlocutory order may be reviewed. (Section 213 of the Code of Civil Procedure.)

It has been suggested that the complainants and appellants, by appearing and offering to pay $400 and to a certain extent complying with the extraordinary order of October 13, 1908, waived their rights, and especially their right to complain of such order. But their offer was summarily disregarded by the trial court. No question of *consensus tollit errorem* can arise because complainants were not allowed to consent. No

principle of estoppel can be invoked because no one was allowed to act on the offer and nobody suffered any detriment by reason of the attempt of complainants to adjust themselves in a spirit of compromise to the court's order. An offer of this kind, if not accepted, is as if it had never been made. A different principle might arise if the defendant had taken any fresh step by reason of the order of October 31. Instead of which he asked for judgment, and while it is something of a mystery why he should appeal from a judgment he himself sought, yet it is evident that he was not satisfied with the order of October 31. Defendant would seem to be estopped from raising any question of estoppe!, waiver or renunciation.

Sections 348, 349 and 350 of the Political Code are as follows:

"Section 348.—The owner of any real property sold for taxes, his heirs or assigns, or duly authorized agents, may redeem the same within ninety days of the issue of the certificate of purchase by payment to the purchaser, his heirs or assigns, of the full amount of the purchase money, with annual interest thereon at the rate of 15 per cent, together with all costs incurred and taxes due. Upon the payment of such amounts, the redemptioner shall be entitled to receive from the purchaser, his heirs or assigns, the said certificate of purchase. The receipt of the said redemption money by any such purchaser, his heirs or assigns, shall operate as a release of all claims or title to the real property held under or by virtue of any such sale for nonpayment of taxes.

"Section 349.—If the aforesaid purchaser, his heirs or assigns, refuse to accept the tender of redemption money so made, the person so tendering the same shall repeat the tender in the presence of at least two witnesses, and if the tender be again refused, the said person and witnesses shall make oath, before the registrar of property who recorded the certificate of attachment, that due tender of the lawful amount of redemption money has been made and refused. Whereupon the registrar shall compute from the proper records the lawful amount of redemption money due, in accordance with the provisions of this Title, and upon receipt of the same, shall issue to the redemptioner a certificate of redemption. The payment of such redemption money to said registrar shall restore to said former owner, his heirs or assigns, all the right, title, interest and estate in

and to said real property, held by said former owner before the sale, for nonpayment of taxes.

"Section 350.—Upon the receipt of such redemption money, in the manner aforesaid, the registrar shall notify the purchaser, his heirs or assigns, of the payment of such money, and shall hold the same subject to the order of said purchaser, his heirs or assigns. Such notification may be sent by registered mail to the last residence of such purchaser, his heirs or assigns, as specified in the certificate of purchase. For his services in the proceedings aforesaid, the registrar shall be entitled to retain from said redemption money a fee of three dollars."

The redemption of the farm "Rita" took place by virtue of the provisions of sections 349 and 350. The right to redeem and its consequences are expressed in section 348. From the use of the words "shall operate as a release of all claims or title," it is evident that when property is redeemed under this law the outstanding title in the purchaser is destroyed and the *status quo* existing before the sale is restored. By paying Liborio Hernández what he had expended in getting the tax title, Felici acquired no new title to the land. This is the universal principle with respect to redemption from tax sales unless the statute has expressly made a different provision. (Black on Tax Titles, sec. 377; *Gould* v. *Day*, 94 U. S., 413; Am. & Eng. Enc. of Law, Vol. XVIII, p. 677.)

Felici did not buy an outstanding title; he merely redeemed in accordance with the provisions of section 348, *supra*. Hence the case of *Darcey* v. *Bagny*, 10 L. R. A. (N. S.), 863, is not applicable. Under the law in force in Porto Rico the coowner redeeming may have had a right of action against his coowners for their proportionate share of the expense of redemption. The rule of the Common Law which did not permit one coowner to sue another is not applicable.

The registrar of property, in delivering a certificate of redemption to Felici, was only certifying that the outstanding tax title was canceled and the property was redeemed and restored. This was the law and of this law Carlos Costa was

bound to take notice when he bought of Felici. It appears on page 29 of the record that all that the registrar did was to record the "redemption" in favor of Felici. On page 17 of the record, likewise, it appears that Carlos Costa had actual knowledge of the existence of the coowners of the farm "Rita." A number of them were women and some of them were infants.

There can be no question of laches in this kind of a case even if the doctrine of laches, as such, applies in Porto Rico, and the period of prescription, in which the complainants had the right to bring this action, had not run.

All that Felici could legally transfer to Carlos Costa was his own undivided interest in the farm "Rita." Hence the complainants had a clear cause of action against him, and it only remains to be seen what are his rights against them.

With respect to the amount which Felici paid to Liborio Hernández to redeem the property, it seems clear that Felici had a claim for contribution from his coowners. But it does not appear that he sold or transferred that claim to Carlos Costa. Hence the latter has acquired no claim to any proportionate share of the money paid by Felici to Liborio Hernández. If it were otherwise, the complainants might be subjected to two actions, one by Carlos Costa and one by Felici.

The defendant claimed for the improvements or expenditures he had made on the property. The first question in this regard is whether he took possession of the land and held it in good faith. The law in this regard seems to be well set forth in the Civil Code as follows:

"Section. 455.—Necessary expenses are refunded to every possessor; but only the possessor in good faith may retain a thing until such expenses are made good to him.

"Useful expenses are refunded to the possessor in good faith with the same right of retention, it being at the option of the party who has defeated him in his possession to refund the amount of the expenses or to pay the increase in the value of the thing in consequence of such expenses."

A similar principle, with numerous authorities, is set forth at page 11 of the 22d volume of Cyc. as follows:

. "It was the rule under the civil law, upon the broad principle of equity, that no one ought to enrich himself at the expense of another, that where one made permanent improvements on land in his possession under a *bona fide* belief of ownership he was entitled to full compensation therefor, less a fair compensation for rents and profits during the period of his occupancy, before the owner of the property could recover the same."

We think the defendant believed, as a matter of fact, he was the sole owner and that the complainants had abandoned or lost their rights, and that he is, therefore, entitled to compensation for the improvements or expenses made for the benefit of the property.

But it will first have to be determined whether the improvements that were made were for the benefit of the land. This does not clearly appear from the record. It will also have to be determined what were the rents and profits.

The case must be reversed and a judgment entered declaring the complainants coowners with Carlos Costa and their respective shares be made subject to the net amount which the court may find to be due in his favor, after a hearing of proof with respect to the improvements for the benefit of the property and with respect to the rents and profits in their favor. The complainants in the meantime should be given an order allowing them to withdraw their deposit should they so desire.

*Reversed.*

Justices MacLeary and del Toro concurred.
Mr. Chief Justice Hernández dissented.
Mr. Justice Figueras did not sit at the hearing of this case.

DISSENTING OPINION RENDERED BY MR. CHIEF JUSTICE HERNÁNDEZ.

In proceedings instituted by the internal revenue collector of Ponce for the collection of taxes due by plantation "Rita,"

in *barrio* "Cerrillo" of that municipality, an attachment was levied on a tract of 30 *cuerdas* of land, segregated from said plantation, belonging to Domingo Felici in joint ownership with others.

Said attached tract having been offered for sale at public auction, it was awarded on February 1, 1905, to José Liborio Hernández for the sum of $200, the collector issuing to him a certificate of sale; but Domingo Felici having delivered at the Registry of Property of Ponce the sum to be paid by José Liborio Hernández as buyer, the registrar, under date of March 8, 1905, issued a certificate of redemption in favor of Felici.

Thereupon, José Liborio Hernández instituted proceedings against both Domingo Felici and the Registrar of Property of Ponce, praying that the certificate of redemption be adjudged null and void, and that he be indemnified for the damages caused him by reason of said certificate, which damages he valued at $1,000.

The case in question was determined by judgment of this Supreme Court rendered November 27, 1906, whereby the judgment of the District Court of Ponce, delivered on February 23 of the same year, was reversed, and the certificate of redemption in favor of Domingo Felici, as owner of the alienated estate, issued by the Registrar of Property of Ponce, was declared valid and effective.

In the opinion which served as basis for the aforesaid judgment this Supreme Court made use of the following language:

"The conclusion of the trial judge that Felici cannot avail himself of the right of redemption to the prejudice of the other coowners can have no influence upon our minds. They have not been parties to the litigation nor do we, for the present, know what such prejudice is, nor can we form judgment in advance as to what pertains to the future.

"We hold only that Felici, as a coowner, has the right to redeem the entire estate sold. But we do not venture to say anything as to

his right of ownership in relation to the other coowners of the said estate. This is not the question submitted to our consideration, nor is it similar thereto.''

Domingo Felici sold to Carlos Costa by public deed of March 13, 1907, for $900, the tract of land he had acquired by right of redemption, which sale was recorded in the registry of property without any encumbrance, and a complaint against the vendee, Costa, was filed in the District Court of Ponce on April 10, 1908, by Rosario Albizu y Vázquez joined by her husband, Julio Hernández, and Micaela and Carmen Albizu y Vázquez, the last two represented by their mother, Rosario Vázquez y Vázquez, who prayed that the defendant be adjudged to acknowledge in behalf of the plaintiffs the same interests which, as joint owners, they had in the aforesaid tract of land, and to return to the plaintiffs their proportionate share in the proceeds of the products of the estate unlawfully collected by Carlos Costa and, furthermore, ordering that the plaintiff, Rosario Albizu y Vázquez, and her husband, Julio Hernández, as larger joint owners, be put in possession of the tract of land, the administration whereof had been entrusted to them, and that the same be divided among all the joint owners or sold by public auction.

The defendant demurred to the complaint alleging that it did not state facts sufficient to constitute a cause of action, which demurrer was overruled by an order of July 20 of last year; and upon answering the complaint he prayed that the latter be dismissed, or, in the unexpected event that the claims of the plaintiffs should prevail, they be ordered to pay the defendant, in proportion to their respective shares, the value of all the useful and necessary improvements which he had made on the premises claimed..

The hearing having been held, the court, on October 31, 1908, handed down its decision, which, on November 15 following, was explained by another.

The first decision, including the conclusions of law, reads as follows:

"As the court understands, the right of the other joint owners to participate in the redemption made by Domingo Felici has not been denied, provided they paid their respective contingent. Such a right existed at the time of the sale to Costa, who purchased with a knowledge of its existence. For this reason the court is of the opinion that Costa now holds the lands subject to the right of participation by the other joint owners. But the court also understands that if the other joint owners desire to assert their right of participation, they must reimburse Costa the quota corresponding to them. If Domingo Felici had not sold those lands and the dominion title were still in his name, there can be no doubt that the other joint owners, exercising their right of participation, would have to reimburse Felici, or his successors, the corresponding quota, according to the redemption price, which was $200. But Costa, acting in good faith and having purchased the lands before the joint owners had claimed their right of participation, is entitled to reimbursement of the corresponding portion of the price paid and expenses incurred by him. The price, according to the evidence submitted, is $900. And it also appears that Costa has not yet obtained any benefits, but, on the contrary, has incurred expenses on 24 of the 30 *cuerdas*, amounting to $85 per *cuerda*. It appears, then, that the plaintiffs, who claim to have a participation of 41.828 per cent in the aforesaid estate, should reimburse Costa in proportion to that percentage on

Sum paid for the lands_____ $900
Expenses on 24 *cuerdas*, at $85 each_____ 2,040

$2,940

"On behalf of the defendants it has been urged that the plaintiffs are guilty of negligence. Now, the court cannot be convinced that the technical defense of laches can be made use of in the district courts of Porto Rico. But, at any rate, the plaintiffs are not chargeable with laches. During two years, more or less, after the sale by auction of the 30 *cuerdas*, the case has been in this court and in the Supreme Court of Porto Rico, by reason of the litigation between Hernández and Domingo Felici. Moreover, it should be borne in mind that the plaintiffs represent quite a number of small shares and that many of them are women. In view of the foregoing reasons

and of the circumstances set forth, the court is of the opinion that the plaintiffs have acted with due diligence. It has also been argued on behalf of the defendant, that he is a third party within the purview of articles 23 and 27 of the Mortgage Law. An extended discussion cannot be entered into upon this argument; it is sufficient to say that to the court these articles of the Mortgage Law do not appear susceptible of such construction.

"From the reasons above set forth it follows that the plaintiffs are obliged to pay to the defendant 41.828 per cent of $2,940. Upon payment of this sum judgment shall be rendered for the plaintiffs, wherein shall be specified the rights of the latter, according to the aforesaid percentage. The costs of this suit are charged against the defendant. Ponce, P. R., Oct. 31, 1908. Martin E. Gill, District Judge."

The explanatory order is conceived in the following terms:

"According to the indications of counsel, the opinion of this court, rendered October 31 last, lacks clearness. From the evidence taken it appears that the plaintiffs possess an undivided interest of 41.828 per cent in the aforesaid 30 *cuerdas,* provided they contribute proportionately to the expenses incurred in good faith by the defendant. According to the computation made by the court, said expenses reached, up to the date of the hearing, the sum of $2,940, whereof $900, paid for the lands in question, and $2,040, expenses of cultivation thereof. It seems that the cultivation of said lands has not yet yielded any income. The plaintiffs must deposit with the court or with a third person, if the parties are agreed as to the appointment of the latter, the sum of $1,229.74. Such deposit must be made on or before the 27th of the present month of November. Counsel for the defendant should inform him that in order to avoid future liabilities he must keep an itemized account of all the expenses and receipts in connection with the 30 *cuerdas* in question, from and after the date of the hearing. Ponce, P. R., Nov. 13, 1908. Martin E. Gill, District Judge."

On November 27, when the plaintiffs should have made the deposit mentioned in the explanatory order of the 27th (*sic*) of said month, they filed a motion with the court, stating that notwithstanding their efforts they had been able to raise only $400, which they deposited at the disposal of the court; that

said sum represented more than the quota corresponding to their undivided shares of the $900 Carlos Costa had declared having paid for the parcel of land, subject matter of the controversy; and that the plaintiffs waived their right to participate in the products of said parcel, as a result of the expenses thereon incurred by the defendant, in exchange for their release from the obligation to contribute to said expenses, and praying that, in the event of their request being denied, they be allowed an extension of time for the delivery of the balance to complete the required $1,229.74.

On November 28 aforesaid a motion was also filed by the defendant, Carlos Costa, praying that the rights of the plaintiffs, secured on the strength of the order of October 31, 1908, be declared to have been abandoned through failure to deposit in time the sum of $1,229.74, as directed by the order of November 13, 1908, the ownership of the property in litigation having been consumated in favor of the defendant, Carlos Costa, by reason of said abandonment.

The court overruled the motion of the plaintiffs, and sustaining that of the defendant, rendered final judgment on December 9, 1908, as follows:

"Case No. 679. *Julio Hernández Díaz et al.,* Counsel Tous, v. *Carlos Costa y Ladrón de Guevara,* Counsel Tord, Toro and Canales. Division of property held in common, and other matters. In the city of Ponce, P. R., this 9th day of December, 1908, a hearing was had of this action, instituted by Julio Hernández Díaz, his wife, Rosario Albizu y Vázquez, and Micaela and Carmen Albizu, the two last mentioned represented by their mother, Rosario Vázquez y Vázquez, counsel for plaintiffs, Attorney José Tous Soto, against Carlos Costa y Ladrón de Guevara, counsel for defendant, Attorneys Tord, Toro and Canales; and *Whereas,* In this case the court rendered a provisional decision under date of October 31 last, which was elucidated by the decision of November 13 following, whereby the right of the plaintiffs to 41.828 per cent of the estate, which is the object of this litigation, was recognized, provided they deposited with this court on or before the 27th of said November the sum of $1,229.74; *Whereas,* On said 27th of November the plaintiffs deposited only $400, which de-

posit cannot be considered as a fulfillment of said decision; *Whereas,* The defendant, alleging noncompliance with said order on the part of the plaintiffs, has filed a motion requesting that final judgment be rendered in this suit, declaring that the rights of the plaintiffs, secured by the decision of October 31, have been abandoned and that the ownership of the property in litigation is thereby consummated in his favor; *Now, therefore,* The court, after duly weighing the evidence submitted and allegations urged by the parties, and conformably to its opinion rendered this day, holds that the law and the facts are in favor of the defendant, and, consequently, it should declare, and does declare, that the complaint does not lie, the plaintiffs being left free to assert in any manner and at any time whatever rights they may deem themselves entitled to. The secretary is ordered to return to the plaintiffs the sum of $400 deposited with him, they being adjudged to pay the costs of these proceedings. Judgment rendered in the city of Ponce, this 9th day of December, 1908, and entered on the same day. Francisco Barnés, Assistant Secretary District Court. Correct. Martin E. Gill, District Court Judge."

On November 30, aforesaid, the plaintiffs took an appeal to this Supreme Court from the decision rendered October 31, and on January 8 of the following year they also appealed from the judgment delivered on December 9.

The defendant, Carlos Costa, likewise appealed on January 8, 1909, from the judgment of December 9, in so much as said judgment is based on the decision of the court rendered October 31, 1908, which is contrary to law.

As we see, three appeals have been taken: One by the plaintiffs, from the order of October 31, 1908; another by said plaintiffs, from the final judgment of December 9 of the same year; and the third by the defendant, from said final judgment, in so much as it is based on the aforesaid order of October 31, 1908.

The first appeal is not practicable, because the decision against which it is directed is not included in any of the cases specifically mentioned in section 295 of the Code of Civil Procedure; and were said decision to be considered as an interlocutory decree, rendered in an action for the divi-

sion of real property, the appeal would be out of time, because taken after the 10 days prescribed under paragraph 3 of said section.

However, adapting ourselves to the spirit of section 213 of the Code of Civil Procedure, we shall consider that decision as excepted to by operation of the law, in so far as possible, and shall bring it up for examination when discussing the appeal from the final judgment taken by the plaintiffs.

The appellant plaintiffs allege in support of their appeal, that the court erred in demanding of them the deposit of a percentage of the $900 paid by the defendant to Domingo Felici as purchase money, instead of a percentage on the $210 paid José Liborio Hernández by Felici for redeeming the parcel of land in question; and that the court also erred in refusing the deposit of the $400, as said sum covered more than the percentage that could be demanded of them by way of deposit, if it is considered that such deposit could not be required to reimburse the defendant for the expenses of cultivation, inasmuch as the plaintiffs had renounced all participation in the products of the land, accruing from such expenses.

If the lower court erred in demanding the deposit of a percentage on $900, instead of on $210, said error was consented to by the plaintiffs when stating at the time of depositing the $400, that said sum exceeded their quota of the $900 paid by Costa for the entire parcel of land.

The plaintiffs not only accepted and consented to, but also complied with, the decision of the lower court rendered on October 31, 1908, elucidated by that of November 13 following, in so far as said decision demanded the deposit of a percentage on the sum of $900 which, as purchase money, was paid by Costa to Felici for the land, and they cannot now go back on their own acts, alleging on appeal that the percentage for the deposit should be reckoned on the sum of $210, which Felici paid José Liborio Hernández to redeem the land.

The decisions of the lower court of October 31 and November 13 of last year are not appealable in the sense indicated, nor can they be considered as excepted to through operation of the law, by reason of the appeal taken from the final judgment of December 9, 1908.

Let us now consider if, in view of the fact that the plaintiffs had renounced all participation in the products of the parcel of land, resulting from the expenses incurred thereon by the defendant, in exchange for their release from the obligation of contributing to said expenses, the lower court was bound to accept the deposit of the $400, as sufficient and effective in law for the purposes of the decisions of October 31 and November 13, 1908, which from this standpoint might be deemed as excepted to.

Section 454 of the Civil Code, to which the plaintiffs resort in support of their charge of error on the part of the lower court, reads as follows:

"If, when good faith ceases to exist, there are any natural or cultivated fruits still ungathered, the possessor shall have the right to recover the expenses he may have incurred in their production, and, moreover, to a part of the net proceeds of the crop in proportion to the duration of his possession.

"The costs shall be distributed, in like manner, *pro rata,* between the two possessors.

"The owner of the thing may, if he wishes, grant to the possessor in good faith the right to complete the cultivation and harvesting of growing fruits, as indemnity for his part of the cost of cultivation and net proceeds; the possessor in good faith who, from any motive, does not care to accept this concession, forfeits the right to be otherwise indemnified."

We are of opinion that the above transcribed legal precept is not applicable to the case at bar, inasmuch as said precept, like all the others of Title V, Book II, of the aforesaid Code, refers to possession and the effects thereof, without any relation to the right of legal redemption which seems to bear some analogy to the right of redemption mentioned in the Political Code.

The Civil Code regulates the right of legal redemption under sections 1424 to 1428 thereof, the latter section providing that in legal redemptions sections 1414 and 1421 shall be observed.

Section 1421 reads:

''The vendor cannot exercise the right of redemption without returning to the vendee the price·of the sale, and furthermore:

''1. The expenses of the contract and any other legitimate payment made by reason of the sale.

''2. The useful and necessary expenses incurred by the thing sold.''

The section transcribed is in open contradiction to section 454, invoked by the appellant plaintiffs.

And let it be noted that we do not maintain that the provisions of the Civil Code are applicable to the present case, which is regulated by a special law; but viewing the question from the standpoint of civil law, as do the plaintiffs, we assert that instead of favoring, they prejudice the case.

The plaintiffs requested in their motion of November 27 that in the event of their not being released from the obligation to contribute to the expenses incurred on the property, by the defendant, in exchange for their renouncing all participation in the products thereof, they should be allowed an extension of time to deposit the rest of the sum of $1,229.74, and it has not been shown, nor even alleged, that in refusing the extension the court abused its discretionary power.

As to the appeal taken by Carlos Costa, we understand that it does not lie, for the following reasons: 1. Because said appeal was taken, not from the judgment of December 9, 1908, which dismissed the complaint, but from the ground thereof, or, in other words, because it was based on the decision of October 31 of the same year, and the law does not authorize an appeal from the grounds of a judgment, but from the judgment itself; 2. Because the judgment appealed from in its purview is favorable to the defendant, and the

appeal, therefore, lacks a finality which can be no other than the modification or reversal of the judgment.

We understand that as the plaintiffs have taken an appeal from the judgment and impugned the ground upon which it is based, the defendant may allege that although the judgment cannot be sustained on that ground, it is upheld on others; but for this purpose there is no need of taking an appeal, the object whereof, as we have stated, is the modification or reversal of the judgment appealed from.

The judgment appealed from in the present case, were the reasons set forth not sufficient, would be sustained on the ground that the action exercised by the plaintiffs is a personal action that should have been prosecuted against Domingo Felici, before he effected the sale to the defendant, Carlos Costa, and against both, after said sale had been consummated, for the purpose of obtaining the rescission thereof, if found to be included under article 37 of the Mortgage Law.

We should, therefore, in deciding the appeal from the judgment of the District Court of Ponce, taken by the plaintiffs, affirm said judgment, and dismiss, because uncalled for, the appeal taken by the party defendant.